H. H. ZACHARIE *v.* G. H. & R. S. KIRK—W. L. MILLER, Intervenor.

Where the master of a boat contracts a debt on account of the boat, the creditor has a right to sue either him or the owners of the boat, or both simultaneously.

In a suit brought against the drawer of a *bill* of *exchange*, it is not necessary to constitute a waiver of want of notice, that an express promise be made to pay the bill absolutely,—it is sufficient, if by reasonable intendment the language imports or implies a promise to pay it ; as a promise to pay if the costs are thrown out.

A boat which has been sold is liable to seizure at the suit of the vendor's creditors as long as it remains in the possession of vendor.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J.
*Durant & Hornor,* for plaintiff. *Lea & Marr,* for defendants and appellants.

LAND, J. This suit was instituted on a bill of exchange for the sum of $357 50 drawn by *George H. Kirk,* to the order of plaintiff, on and accepted by *R. S. Kirk & Co.* The bill was drawn on account of the steamboat Messenger, and the petition alleges, that it was protested for non-payment, and that due notice was given to the drawer, *George H. Kirk,* who was at the time a part owner with *Robert S. Kirk,* and with him bound *in solido* for the debts of the steamer.

This suit was commenced by attachment, and the steamboat Messenger was seized as the property of defendants. *William L. Miller* intervened in the suit, and claimed the boat as his property by virtue of a purchase on the 28th day of June, 1858, from *Robert S. Kirk,* and the recording of his title at the Custom-house, in this city, on the same day.

There was judgment in favor of the plaintiff against the defendants, and also against the intervenor. The defendant, *George H. Kirk,* and the intervenor, *W. L. Miller,* have appealed.

The defendant contends, that his only liability to plaintiff, was that of the drawer of the bill of exchange, and that he was never notified of the protest for non-payment, and that he was thereby discharged.

The evidence does not show that *George H. Kirk* was a part owner of the boat, nor does it show that notice of protest for non-payment, was given to him, but it appears, that he was the master of the boat, and the special agent of *R. S. Kirk,* the admitted owner ; that the debt for which the bill was drawn by him, had been contracted on account of the boat, and that since the institution of this suit, he acknowledged his liability to pay it, by saying, in the language of the witness, *" that he would pay the claim, if the costs were thrown out."*

*As master of the boat,* he was personally liable for the debt contracted by him, and the plaintiff had the right to sue him, or the owners, or both simultaneously, for its recovery. *Mead* v. *Buckner,* 2 L. 284. *Henshaw* v. *Rollins,* 5 L. 335.

Having been sued on a bill of exchange given for a debt for which he was personally and absolutely liable, it is a fair presumption, without any evidence to the contrary, that he had full knowledge of the *laches* of the holder, the plaintiff, when he promised to pay the bill, if the costs were thrown out, which declaration, in our opinion, was a confession of his legal liability, and makes sufficient proof of a waiver of the want of due notice.

It is not necessary that an express promise should be made to pay the bill or note absolutely. It will be sufficient, if by reasonable intendment, the language
55

ZACHARIE
v.
KIRK

imports, or implies a promise to pay it. Hence, it has been held, that a promise in these words, " *If the acceptor does not pay, I must ; but exhaust all your influence with the acceptor first*," was a waiver of notice. Story on Promissory Notes, ?364.

The words " *if the costs were thrown out*," we understand, to be an expression of unwillingness *to pay the costs of suit*, and not a *condition*, or *limitation* of his *admission of liability to pay the bill*. We are, therefore, of opinion, that the judgment against the drawer is correct.

The intervenor, *W. L. Miller*, contends that the first Judge erred in refusing to receive in evidence the enrollment of the boat in his name, and a license issued in his name authorizing him to employ the boat in the coasting trade ; and also, in refusing to receive the testimony of *R. W. Adams*, to prove, that he, the witness, held a part of the promissory notes given for the price of the boat, as collateral security for a debt due him by the vendor, *R. S. Kirk*.

If this testimony had been received, it would not have benefited the case of the intervenor. He was the bar-keeper of the boat, without, or with very limited means, and became the purchaser at the price of $17,000, for which he gave his promissory notes without security. There was no change in the officers of the boat, nor actual delivery of possession, or other circumstances indicating a change of property or ownership, save the paper title recorded at the Customhouse.

If the sale to *Miller* was not *a pure simulation*, the vendor was still in possession of the boat at the date of the plaintiff's attachment, on the 18th day of October, 1858, and the boat was, therefore, under these circumstances, subject to seizure at the suit of the vendor's creditors.

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed with costs.

MERRICK, C. J., concurring. I have some doubts in this case, but I yield them to the clearer convictions of my colleagues.